UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| NICHOLAS F., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-261-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Nicholas F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on November 3, 2018, alleging disability beginning June 29, 2018 (the disability onset date), due to various mental impairments. Transcript ("Tr.") 78-79, 189-96, 231. The claims were denied initially on January 9, 2019, and upon reconsideration on May 9, 2019 (Tr. 100-19, 120-143), after which Plaintiff requested an

administrative hearing (Tr. 144-45). On April 28, 2020, Administrative Law Judge Moises Penalver ("the ALJ") conducted a telephonic hearing.[1] Tr. 15, 31-63. Plaintiff appeared and testified at the hearing and was represented by Kathryn Eastman, an attorney. Tr. 15. Frank A. Lindner, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on September 2, 2020, finding that Plaintiff was not disabled because substance use was a contributing factor material to the determination of disability. Tr. 15-26. On December 23, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 2, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15, 312.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

3

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 2, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since June 29, 2018, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

2. The claimant has the following severe impairments: learning disorder; status-post traumatic brain injury ("TBI") with neurocognitive symptoms; post-traumatic stress disorder ("PTSD"); major depressive disorder ("MDD"); generalized anxiety disorder ("GAD"); and substance use disorder (20 CFR 404.1520(c) and 416.920(c)).

3. Including the claimant's substance use, the severity of the claimant's impairments met the criteria of section 12.03 of the "Listing of Impairments" at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925).

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 404.1522 and 404.922, and 416.920(c)).

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(f) and 416.994(b)(5)(i)).

6. If the claimant stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he would be limited to simple, routine, and repetitive tasks. He would be limited to low stress jobs, defined as positions with no more than occasional decision-making and occasional changes in the work setting. He could not tolerate fast-paced work environments, defined as positions containing constant activity with work tasks performed sequentially in rapid succession. He would require breaks every hour lasting two to three minutes, in addition to regularly scheduled breaks.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. If the claimant stopped the substance use, considering his age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

Tr. 15-26.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on November 3, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 26. The ALJ also determined that based on the application for supplemental security income protectively filed on November 3, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence because it did not precisely match a medical opinion in the record. *See* ECF No. 8-1 at 2, 8-15. Therefore, Plaintiff alleges, the ALJ based the RFC assessment on his own lay judgment. *See id*.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination, and there is no requirement that the ALJ's RFC finding mirror a medical opinion. *See* ECF No. 9-1 at 6-12.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including Plaintiff's longitudinal treatment history, his mental status examination findings, and his wide range of activities, and the ALJ reasonably concluded that if Plaintiff stopped the substance use, he would have the capacity to perform unskilled, low stress jobs that are not in fast-paced work environments, but include simple, routine, and repetitive tasks and breaks every hour lasting two to three minutes in addition to regularly scheduled breaks. Tr. 19-25. Accordingly, the Court finds no error in the ALJ's RFC finding.

As the ALJ noted, the longitudinal medical record reveals evidence of significant psychiatric deterioration in the Spring and Summer of 2019, culminating in a psychiatric hospitalization in May 2019. Tr. 19-20, 413-17, 439-41, 504, 545.  Plaintiff was seen on an urgent basis at Buffalo Medical Group ("BMG") on May 20, 2019. Tr. 387-89, 439-41. He had been discharged from DENT Neurologic Institute ("DENT") after he "stopped Psych meds on [his] own," and they would no longer prescribe medical marijuana. Tr. 439. He reported feeling worse; he was "nauseous and sick;" and "feels like he can't work." *Id*. On examination, he appeared "not anxious" and "[did] not exhibit a depressed mood;" he was agitated; his speech was delayed; and he "express[e]d impulsivity." Tr. 440. He expressed no suicidal or homicidal ideation. *Id*.

Shortly thereafter, on May 22, 2019, Plaintiff's mother called the "Crisis Services Team" from Erie County Medical Center ("ECMC") because Plaintiff had "been acting 'bizarre' and experiencing psychosis." Tr. 413-17. Due to Plaintiff's "recent aggressive behavior," 911 was also called. Tr. 413. Plaintiff admitted that he had stopped taking his medications for over a year. *Id*. His mother reported that he had been sending her "weird texts;" he had not been sleeping or eating for the past few days; and he was possibly using drugs off the street. Tr. 414. He had also been spending money rapidly, including $3,000.00 on gym equipment. *Id*. His other bizarre behavior included going out in the middle of the night with his hockey bag full of items such as baseball cards. *Id*. When approached by police officers and told he would be taken to the hospital, Plaintiff punched an officer several times in the face. *Id*. The officer attempted to "taze" Plaintiff, which was not effective, but eventually, Plaintiff was handcuffed and restrained on a stretcher. *Id*. While on the stretcher, Plaintiff made statements that "Jay-Z needed to help him and that the water and the lakes are all dirty and that LeBron James called him to tell him to play basketball." *Id*.

Plaintiff was ultimately transported to ECMC, where he was hospitalized from May 23, 2019, through June 21, 2019. Tr. 414, 487-98. Plaintiff was readmitted to ECMC from June 27, 2019, through July 11, 2019; he had been brought in "by police after deteriorating markedly in the week following discharge." Tr. 472-86. On discharge, Plaintiff "was doing very well and stated that he had not felt this well in a long time or perhaps ever." Tr. 475.

Following his hospitalization, Plaintiff received psychiatric treatment from Landmark Health ("Landmark"). Tr. 500-55. A treatment record dated July 15. 2019 indicated that Plaintiff was being treated for medication management after his recent psychiatric hospitalization at ECMC due to a substance-induced psychosis, which had since resolved. Tr. 504. The record also indicated that since a TBI approximately five years prior, Plaintiff had "repeatedly become psychotic for

extended periods when he would use K2 or other designer/synthetic drugs." *Id.* Plaintiff reported consistent periods of depressed mood, low energy, sleep disturbance, negative thinking, and feelings of extreme guilt during periods of depression; however, he denied any symptoms of depression, psychosis, mania, or anxiety, and also denied any suicidal or homicidal ideation. *Id.* Plaintiff's mother was present during this psychiatric visit and reported that Plaintiff "ha[d] never exhibited psychotic symptoms outside of substance use." *Id.*

On July 31, 2019, Plaintiff was seen for a consultation regarding restarting his medical marijuana. Tr. 545. He admitted that he resorted to recreational marijuana after his medical marijuana was terminated by DENT in May 2019 due to medication noncompliance. *Id.* The illicit drugs had adverse effects, which resulted in his psychiatric hospitalization. *Id.* During a psychiatric follow-up visit in August 2019, Plaintiff reported that he was struggling with weight gain and a lack of motivation. Tr. 508. He was using double the recommended dose of his medical marijuana because he felt little benefit from the recommended dose. *Id.* The record states that Plaintiff was "fixated on medical marijuana and obtaining more" and "seemed unwilling to discuss much else at [that] time." *Id.* Although he was clinically stable, he required continued monitoring of his chronic symptoms of PTSD, and it was noted that his recent bout of substance-induced psychosis was likely prolonged due to his history of TBI. Tr. 510.

As noted above, Plaintiff challenges the ALJ's RFC finding. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC

is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claims on November 3, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs

and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also*
42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42
U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the
Commissioner determines necessary or appropriate to carry out the functions of the
Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the
Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458,
466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow
and limited to determining whether they are arbitrary, capricious, or in excess of the
Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v.
Campbell*, 461 U.S. at 466).

Here, the ALJ complied with the regulations, and contrary to Plaintiff's contention, the
ALJ thoroughly considered the medical and non-medical evidence in the record, including
Plaintiff's longitudinal treatment history, his mental status examination findings, and his wide
range of activities, to formulate an RFC that properly accounted for all of Plaintiff's credible
limitations, as supported by the record.

First, the ALJ's RFC finding is consistent with Plaintiff's longitudinal treatment history.
Tr. 19-25. *See* SSR 96-8p, 1996 WL 374184, at *5 (identifying "medical history" as relevant
evidence when assessing RFC). For example, in August 2018, shortly after Plaintiff's June 2018
alleged disability onset date, DENT provider Nicole E. Miller, P.A.-C. ("Ms. Miller"), noted that
Plaintiff reported he was not using illicit drugs; he was using only medical marijuana as prescribed;
the results of Ms. Miller's mental status examination showed intact memory, coherent speech, only
moderately diminished concentration, and no evidence of hallucinations or delusions. Tr. 435-36.
In November 2018, Horacio Capote, M.D. ("Dr. Capote"), also a DENT provider, noted that

Plaintiff reported he benefited from medical marijuana, experiencing only mild depression and no anxiety. Tr. 429, 432. Dr. Capote's mental status examination findings were similar to Ms. Miller's, both of which are consistent with an RFC for unskilled, low stress jobs that are not in fast-paced work environments. Tr. 23, 431, 435-36.

In January 2019, Plaintiff participated in cognitive behavioral therapy sessions with Christopher D. Radziwon, Ph.D. ("Dr. Radziwon"). Tr. 352-56. Dr. Radziwon noted that Plaintiff reported he was "doing well" on prescribed medical marijuana, and he enjoyed "working out and helping people at the gym." Tr. 352-62. As the ALJ noted, in February 2019, Ms. Miller again noted that Plaintiff reported he was not using illicit drugs, and her mental status examination showed intact memory, coherent speech, "pretty good" mood, only moderately diminished concentration, and no evidence of hallucinations or delusions. Tr. 21-23, 67-68, 425-27, 463-65; *see also Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *3 (W.D.N.Y. Feb. 20, 2020) (The ALJ properly focused on the record evidence from the claimant's periods of abstinence from illicit drugs in determining the claimant's RFC). In March 2019, Lauren Jendraszek, R.P.A.-C. ("Ms. Jendraszek"), noted that Plaintiff remained on medicinal cannabis for symptom management with a good response, including a stable mood and the ability to participate in "his normal daily activities." Tr. 458, 460. Ms. Jendraszek's examination showed normal neurological findings; Plaintiff readily engaged in conversation; and he had clear and logical thoughts. Tr. 460. Based on the foregoing, Plaintiff's longitudinal treatment history is consistent with the RFC finding.

The ALJ also considered that Plaintiff required psychiatric hospitalization in May 2019 due to substance-induced psychosis caused by Plaintiff using street drugs or recreational marijuana after his medical marijuana was terminated. Tr. 19-20, 413-17, 439-41, 504, 545. However, the

ALJ emphasized that subsequent treatment notes showed that Plaintiff denied illicit drug use and any new psychiatric symptoms, and his mental symptoms improved with counseling, psychotherapy, and prescribed medication. Tr. 20-21, 23-24, 501-18, 530-39, 541, 543. Landmark providers Jarod Masci, M.D. ("Dr. Masci"), Meghan Canfield, L.C.S.W. ("Ms. Canfield"), and Melissa Sabadasz, L.M.H.C. ("Ms. Sabadasz"), provided mental status examination reports beginning on July 15, 2019 that showed good eye contact, fair to good insight and judgment, and a logical and goal-directed thought process. Tr. 21-24, 501-21, 530-37, 543.

On July 22, 2019, BMG provider Pamela J. Burton, P.A. ("Ms. Burton"), described Plaintiff as attentive and observed normal behavior and thought content. Tr. 391, 443, 472. In November 2019, Ms. Burton observed that Plaintiff had normal speech and thought content. Tr. 451. During a medical marijuana follow-up visit with Maria Janda, Pharm.D. ("Dr. Janda") in January 2020, Plaintiff's mental status examination findings showed a good mood; fair insight, judgment, and eye contact; no hallucinations; coherent speech with normal rate/volume; and logical, linear, and goal-directed thoughts. Tr. 542. These findings all provide further support for the ALJ's RFC assessment.

Plaintiff's reported activities also support the RFC assessment. *See Monroe v. Comm'r of Soc. Sec.*, No. 16-1042-cv, 676 F. App'x 5, at *8-*9 (2d Cir. 2017) (the ALJ properly considered evidence of the claimant's activities when assessing RFC). The record shows that Plaintiff worked at part-time jobs when not taking illicit drugs during the period at issue, including working at two part-time jobs simultaneously in September 2019. Tr. 18, 21-22, 24-25, 40-46, 213-14, 365, 425, 433, 458, 460, 462, 520-26. *See Jill A.H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1218, 2022 WL 1173480, at *5 (W.D.N.Y. Apr. 20, 2022) (Part-time work may show that a claimant "is able to do more than they actually did") (citing *Washburn v. Colvin*, 286 F.Supp.3d 561, 565 (W.D.N.Y.

14

2017)); *Elizabeth K. v. Kijakazi*, No. 20-CV-1465L, 2022 WL 1049244, at \*2 (W.D.N.Y. Apr. 7, 2022) (the ALJ properly considered the claimant's engagement in part-time work when determining her RFC). In addition, Plaintiff drove, adhered to a regular exercise schedule at the gym, played hockey multiple nights per week, and attended night school three days a week to become a certified personal trainer. Tr. 22-25, 47-48, 352-61, 365, 367, 393, 425, 435, 445, 458-60, 504, 524-26. *See also Margo J. Comm'r of Soc. Sec.*, No. 6:20-cv-1614-DB, 2022 WL 409573, at \*8 (W.D.N.Y. Feb. 10, 2022) (the claimant's wide range of activities supported the ALJ's finding that she could do unskilled/simple work).

Plaintiff argues that the ALJ erred because he did not adopt the RFC assessment verbatim from a medical opinion, and thus allegedly based the RFC assessment on his own lay judgment. *See* ECF No. 8-1 at 2, 8-15. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d).

Furthermore, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe*

*v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental); *John H. v. Comm'r, Soc. Sec.*, No. 1:20-CV-921-DB, 2021 WL 2355107, at *4 (W.D.N.Y. June 9, 2021) ("Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional"); *see also Bliss v. Comm'r of Soc. Sec.*, No. 10-1558, 406 F. App'x 541, 542 (2d Cir. 2011) ("[T]he ALJ need not involve medical sources or claimant's counsel in his deliberative process or assessment of the evidence"); *Julie W. v. Comm'r of Soc. Sec.*, No. 20-CV-01042, 2021 WL 6064389, at *7 (W.D.N.Y. Dec. 22, 2021) ("an RFC may be supported by substantial evidence, even if it does not correspond to any particular medical opinion") (internal citations omitted);  Thus, Plaintiff has failed to identify an error in assessing RFC that requires remand.

Moreover. as previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the treatment history, mental status examination findings, and Plaintiff's wide range of activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE